IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**KATHLEEN ELLEN HICKS**                                                               **PLAINTIFF**

**V.**                   **NO. 4:20CV00804 KGB-PSH**

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                                 **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.  Introduction:**

Plaintiff, Kathleen Ellen Hicks, applied for disability benefits on September 18, 2017, alleging disability beginning on April 21, 2017. (Tr. at 12). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application.

1

(Tr. at 25). The Appeals Council declined to review the ALJ's decision. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

**II.    The Commissioner's Decision:**

The ALJ found that Ms. Hicks had not engaged in substantial gainful activity since the alleged onset date of April 21, 2017. (Tr. at 15). At Step Two, the ALJ found that Ms. Hicks had the following severe impairments: status-post cervical fusion with mylomalacia, fibromyalgia, and migraines. *Id*.

After finding that Ms. Hicks's impairments did not meet or equal a listed impairment (Tr. at 19), the ALJ determined that Ms. Hicks had the residual functional capacity ("RFC") to perform work at the light exertional level, with additional limitations: (1) she can never climb ladders, ropes, or scaffolds; (2) she can no more than occasionally crawl; (3) she should not reach overhead bilaterally; (4) she should avoid all exposure to unprotected heights and the use of hazardous machinery; (5) she should avoid concentrated exposure to excessive vibration. *Id*.

The ALJ determined that Ms. Hicks was able to perform past relevant work as an accounting clerk and a data entry clerk. (Tr. at 24). Thus, the ALJ found that Ms. Hicks was not disabled. *Id*.

## III. <u>Discussion</u>:

    A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant

3

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.  Ms. Hicks's Arguments on Appeal

Ms. Hicks contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that: (1) the RFC for light work did not fully incorporate her limitations; (2) the ALJ did not give good reasons for rejecting the opinions of Ms. Hicks's treating providers; and (3) the ALJ failed to resolve an apparent conflict between the Vocational Expert's testimony and the Dictionary of Occupational Titles at Step Five. The Court agrees that the RFC outstripped Ms. Hicks's abilities, so reversal is warranted.

A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical

and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ bears the primary responsibility for assessing a claimant's RFC and the finding must be based on all relevant evidence in the record. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). Because a claimant's RFC is a medical question, the ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. *Cox. v Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

The medical evidence in the record as a whole undermines the ALJ's conclusion that Ms. Hicks could perform work at the light level.[1] Ms. Hicks suffered from neck pain that required a cervical fusion in December 2016. (Tr. at 44). She also suffered from fibromyalgia, which presented with 18 of 18 tender points and a positive ANA test, classical markers of the presence of fibromyalgia. (Tr. at 22). Her complaints of pain throughout her body, difficulty sleeping, and fatigue support the fibromyalgia diagnosis.

Cervical MRI showed significant spinal cord impingement (Tr. at 388-389),

---

[1] The controlling regulation defines light work as requiring the ability to lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, ***a good deal of walking or standing***, and involving some pushing and pulling of arm or leg controls when sitting most of the time. 20 CFR § 404.1567 (emphasis added).

and the ALJ noted that Ms. Hicks demonstrated an antalgic gait, decreased range of motion and tenderness in the neck, and reduced strength and reflexes. (Tr. at 23, 1587-1590, 1823-1824). Ms. Hicks was referred for physical therapy, but due to pain, she could only complete four sessions. (Tr. at 59). The physical therapist cited abnormality of gait and mobility, with ambulation as a functional limitation. (Tr. at 727-742). He said improvement in status was "uncertain." (Tr. at 728). Ms. Hicks had to use her arms to sit down and was listed as having an increased fall risk. (Tr. at 740-742). The physical therapist said Ms. Hicks was unable to leave her home without assistance. (Tr. at 738). At times during the relevant time-period, she used a walker. Her neurosurgeon told her to refrain from housework or yard work. (Tr. at 44-45, 740-742).

Ms. Hicks's treating physician, Dr. Ali Raja, M.D., noted that she had "daily severe neck pain, unamenable to conservative measures." (Tr. at 1573-1576). He opined that Ms. Hicks should limit herself to no excessive pushing, pulling, bending, weight-lifting, or strenuous activities, and she should not lift anything more than 5-10 pounds. (Tr. at 1576). The ALJ observed that this opinion would limit Ms. Hicks to sedentary work, not light work. (Tr. at 23). Indeed, the ALJ stated that Dr. Raja was familiar with Ms. Hicks's medical history and that his opinion was consistent with the evidence in the record. *Id*. The ALJ held the opinion to be persuasive, but

6

for some reason did not adopt the sedentary-type restrictions. *Id*.

Dr. Kevin Collins, M.D., with Rehabilitation Medical Consultants, examined Ms. Hicks in May 2018, and stated that she was "exceedingly disabled." (Tr. at 1587-1590) He said her pain impacted her lifestyle significantly. *Id*. Dr. Collins saw Dr. Raja's opinion and he said that "he was very clear; he did not want her doing any jobs." *Id*.

Finally, another treating physician, Dr. Kathleen Chenault, M.D., wrote a letter detailing Ms. Hicks's chronic pain, and said that the problems have caused her difficulty functioning in her job. (Tr. at 1841).

The ALJ pointed out that Ms. Hicks could do things like watch TV and visit on the phone. (Tr. at 19-23). But these activities do not indicate she could do light work. She also said that she had to stop when trying to walk for exercise, could not make it all the way through the grocery store, and could not sit in church. (Tr. at 52-61). See *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)("The ability to do some activities, such as light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.")

The medical evidence, the opinion evidence, and testimony from Ms. Hicks seriously undermines the ALJ's conclusion that she could perform light work. The

7

RFC lacks the required evidentiary support.

### III.  Conclusion:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The RFC did not fully incorporate Ms. Hicks's limitations.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 23rd day of September, 2021.

_____
UNITED STATES MAGISTRATE JUDGE